**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL WIESNETH**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13 C 4168 |
| | ) | |
| **JOSEPH KRIEBS**, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Following this Court's entry of the Final Pretrial Order ("FPTO") jointly submitted by counsel in this diversity action stemming from a motor vehicle accident, the parties followed up with the motions in limine that had been forecast in the FPTO. Those motions have recently reached the fully-briefed stage -- Motion Nos. 1 through 6 tendered by plaintiff Michael Wiesneth ("Wiesneth")[1] and Motion Nos. 1 through 7 proffered by defendants John D. Anderson Trucking, Inc. ("Anderson") and Joseph Kriebs ("Kriebs"). This memorandum opinion and order will address Wiesneth's motions first and will then turn to the Anderson-Kriebs motions.

### Wiesneth Motions

As n.1 has said, Wiesneth's counsel has prefaced all but one of the more extended discussions of his motions in limine by a brief summary paragraph. Here are those summaries as to Motion Nos. 1 and 2, both of which deal with statements attributed by Anderson to a former

---

[1] Although Wiesneth's counsel labeled his submission "Plaintiff's Motions in Limine 1-5," it also included a paragraph bearing the number 6 that deviated from the pattern employed as to the other five motions by not beginning the analysis with a brief summary of its content. That understandably led to defense counsel's response being captioned "Response to Plaintiff's Motions in Limine 1-6."

driver for his company, David Craton:

> 1. Bar any testimony from John Anderson as to what Dave Craton told him and what opinion Dave Craton expressed to him (Anderson) as to the cause of the accident.
>
> 2. To bar Anderson from testifying that "Dave Craton stated that had Joe not hit the brakes and swerved, that the container truck (phantom truck) would have drove right through the side of Joe's cab."

In response, the Anderson- Kriebs summary is amorphous at best:

> 1-2. Dave Craton's Statements to John Anderson Should Be Permitted for any Use Other than "to prove the truth of the matter asserted" as barred by FRE 802 and 803.

There is no need to repeat the circumstances under which Craton's name and his claimed recollection, which in turn was purportedly recalled by Anderson in his deposition (taken a year ago and some five years after the occurrence sued upon) first emerged. Suffice it to say that Wiesneth's first two motions are granted on hearsay grounds, and no reasonable predicate appears for suggesting any possible reconsideration or revision of that ruling.

Next, Wiesneth's Motion No. 3 is summarized in this manner:

> Bar Michael Bendas from offering any engineering opinions especially in accident reconstruction, speed, braking distances and the like.

Here is the equally brief summary in the Anderson-Kriebs response filed April 15 as Dkt. No. 93:

> Michael Bendas should be permitted to testify concerning "accident reconstruction speed, braking distances and the like."

And even before the Wiesneth motions in limine were filed, defense counsel had filed a three-page Memorandum in Support of Testimony of Michael Bends and William Petullo (Dkt. No. 83).

Both of those responsive submissions inexplicably cite to Fed. R. Evid. ("Evid. Rule") 704 rather than to the controlling Evid. Rule 702. As to the latter, some explanation as to this Court's direct involvement in that Rule's drafting and in the drafting of the extensive Advisory Committee Notes on the year 2000 amendments to that Rule is in order.

When then Chief Justice Rehnquist reconstituted the Advisory Committee on Evidence Rules after a two decade hiatus in its existence, this Court was privileged to have been selected as one of the members of the reconstituted Advisory Committee. And when the task of amending Evid. Rules 701 through 703 in response to the decision in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) had to be addressed by the Advisory Committee (particularly in light of the later decision in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)), this Court was selected to head up the subcommittee charged with that task. In that capacity it worked closely with the truly outstanding reporter to the Advisory Committee, Professor Daniel Capra of Fordham Law School, in drafting both the revised Rules and the proposed Advisory Committee Notes. It is fair to say that Professor Capra and this Court acted as a team in providing that input that ultimately received the approval of the Advisory Committee as a whole, then the approval of the Standing Committee on Rules of Practice and Procedure and then ultimately the approval of the United States Supreme Court, after which the Rules became formally revised when Congress did not veto the Supreme Court's submission.

In the meantime Honorable Fern Smith, who had been chairperson of the Advisory Committee during the early years of that gestation period, was named to head the Federal Judicial Center, and this Court was fortunate enough to have been appointed to succeed her as chair of the Advisory Committee in 1999. Thus it was under this Court's chairmanship that the Supreme Court's Kumho opinion approved the Advisory Committee's (and this Court's) work on

the matter -- as the timing turned out, the Advisory Committee's proposed amendment to Evid. Rule 702 had been released for public comment before Kumho came down, so that the Supreme Court's decision in Kumho had actually cited the Advisory Committee's Note with approval.

All of that said, however, this Court lays no claim to the label "expert" -- a word whose use is verboten in its courtroom.[2] But this Court is certainly well-qualified to render an informed opinion on the subject, and that opinion is a firmly held one that the views of defense counsel as expressed in the current motions in limine are seriously mistaken.

In that respect this Court is not certain whether defense counsel complied with the express requirements of Fed. R. Civ. P. 26(a)(2) as to witness Bendas -- the two references to his "report" at page 4 of the Anderson-Kriebs Response appear to refer to his typewritten "Accident Details" statement, which is in an unusual form for that purpose. But certainly Bendas' testimony as set out at pages 3 and 4 of the Anderson-Kriebs Response and in defense counsel's earlier Dkt. No. 83 memorandum in support of his testimony does not qualify him under Evid. Rule 702 in terms of his professional qualifications or otherwise.[3]

---

[2] Because the customary usage of that term automatically tends to attach special weight to the views of a person credentialed in that fashion, what had been the typical cautionary jury instruction in that area smacked of being oxymoronic. Hence every jury in a trial before this Court is instructed in terms of dealing with the testimony of "opinion witnesses" rather than "expert witnesses" -- see the final paragraph of the Advisory Committee Notes to the 2000 amendments to Evid. Rule 702, a paragraph specifically crafted by Professor Capra and this Court. That "opinion" witness rather than "expert" witness characterization is embodied in the text of Instruction 1.21 authored by the Committee on Pattern Civil Jury Instructions of the Seventh Circuit.

[3] Page 2 of the Anderson-Kriebs Response refers to Bendas as "a trained engineer" -- but as Wiesneth's Motion No. 3 states at page 3:

> Mr. Bendas does not possess any of the criteria to even remotely allow him to render expert testimony. During his deposition, Mr. Bendas admitted that he was

(continued)

What all of this comes down to is that Wiesneth's Motion No. 3 is also granted. Although Bendas may certainly testify as a percipient fact witness as to what he recalls seeing at the time of the accident, he will have to be admonished to steer clear of expressing opinions in any of those areas.

Next, Wiesneth's Motion No. 4 is summarized briefly in this fashion:

> To bar Mr. Bendas from offering opinions that the plaintiff was "tailgating" him.

And the Anderson-Kriebs Response puts that contention directly in issue:

> Bendas should not be barred from testifying that the Plaintiff was tailgating him.

On that score the term "tailgating" poses a problem because it is in such common usage. In that regard it is almost certain that every driver (and most likely most every nondriver as well) has used the term at one time or another, but the difficulty is that the term is one of indefinite content in terms of quantification.

That being the case, Bendas may testify (again as a percipient witness) as to his recollection of the distance between the vehicles at relevant times (and of course such testimony is subject to appropriate cross examination), for that is the kind of lay testimony that qualifies under Evid. Rule 701. But here too no expressions of Bendas' value judgments (such as

---

(footnote continued)

> a "nuclear engineer" and that he had "never" practiced as an engineer and that he had no experience in accident reconstruction nor had he taken any courses in accident reconstruction.

It goes without saying that engineers are not fungible, and the nature of witness Bendas' actual occupation and his other qualifications don't do the job here.

"following too closely") are in order -- that subject is for jury determination. So Wiesneth's Motion No. 4 is granted as well.

As to Motion No. 5, the last of Wiesneth's motions headed by a brief summary, here is that summary:

> To bar any reference by William Petullo, passenger in the vehicle driven by Michael Bendas from offering the opinion that "it is unfortunate that Mr. Wiesneth was following too closely and rear ended us."

In turn, the summary in the Anderson-Kriebs Response says this:

> William Petullo Should not be Barred from Offering the Opinion that Plaintiff Was Following his Vehicle Too Closely.

What has been said as to Wiesneth's Motion No. 4 applies here with equal force. It is unclear whether Petullo is intended to be called as a live witness, for the Response refers to a written "statement memorializing his observations," and his deposition was not taken. In any event the earlier-stated ruling as to witness Bendas applies to Petullo too, and Wiesneth's Motion No. 5 is granted as well.

That leaves only Wiesneth's last motion , which has no brief caption but has instead taken the form of this text (copied verbatim, including a number of obvious errors) in a paragraph bearing the number 6:

> Under Rules 702, 703, or 705 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharm, Inc. 509 U.S. 579 (1993) Neither Mssrs Petullo nor Bendas remotely satisfy the elements necessary to be permitted to testify as an expert witness. As the court stated in Daubert the specific factors to allow testimony would be:
>
>> (1) whether the expert's technique or theory can be or has been tested -- that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when

> applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.
>
> Clearly, neither gentlemen have the factors that would warrant admission of any of the opinions discussed above and should be barred from offering them.

That motion is addressed in the Anderson-Kriebs Response at its pages 3 and 4.

Unsurprisingly that responsive treatment is largely a rehash of the Anderson-Kriebs positions dealt with earlier in this opinion -- and repetition has not converted defense counsel's earlier unpersuasiveness into persuasiveness. Hence Wiesneth's Motion No. 6, although it would get a failing grade in Proofreading 101, is granted like its earlier counterparts.

**Anderson-Kriebs Motions**

As was true with respect to the Wiesneth motions in limine, this opinion's treatment of the seven Anderson-Kriebs motions in limine (Dkt. No. 81) will in the first instance set out the movants' summary descriptions. But unlike the Anderson-Kriebs Response to the Wiesneth motions, the treatment of each Anderson-Krieb motion in Wiesneth's Response (Dkt. No. 91) proceeds with a narrative rather than attempting to begin with an encapsulation of the response.

Thus, for example, Anderson-Kriebs' Motion No. 1 is summarized this way:

> Bar any testimony, evidence or claim as to prior citations, accidents, or "bad acts" of Joseph Kriebs.

In response Wiesneth's counsel acknowledges the general prohibition against so-called "bad acts" testimony (see Evid. Rule 404(b)(1)) but urges that an exception to that prohibition applies

where the conduct in issue bears on Kriebs' credibility.[4] In this instance Wiesneth seeks to introduce, for the latter purpose, Anderson's testimony that although Kriebs was required to tell Anderson about prior accidents he never complied with that requirement, so that Anderson ultimately fired Kriebs for that reason.

Those considerations look in opposite directions, most likely calling the balancing test of Evid. Rule 403 into play. In that respect Anderson-Kriebs' Motion No. 1 will be granted for the present -- but counsel for the parties are ordered, in advance of trial, to provide relevant citations (but not argument as to the cited cases) bearing on Evid. Rule 403 balancing.

Next, Anderson-Kriebs' Motion No. 2 is summarized in this fashion:

> Bar any evidence, testimony or argument of settlement of claims involving any other driver or insurer of any other vehicle allegedly involved in this accident.

Because Wiesneth's counsel has offered no objection to that motion, it is granted.

Here is the summary description of Anderson-Kriebs' Motion No. 3:

> Bar any evidence, argument, and testimony that Bobry Keys-Walker's vehicle had fire inside of the passenger compartment.

Wiesneth's Response contends that both the fire and driver Keys-Walker's testimony about it are "indicative of the defendant's speed at the time of the collision and a failure to slow down." But that assertion is not bolstered by any claimed evidence of a causal connection -- only such inferential assertions as the following:

> Jurors should be permitted to take their own experiences into account when hearing the testimony. Vehicles do not ordinarily catch fire unless there was gasoline leakage.

[4] This Court rejects Wiesneth's alternative justification based on an asserted "habit" of reckless driving admissible under Evid. Rule 406.

That isn't enough to support what would really be a digression from the core issues in this case. So Anderson-Kriebs' Motion No. 3 is granted too.

As Anderson-Kriebs' Motion No. 4 is summarized, it overlaps materially what has already been said as to their Motion No. 1:

> Bar any evidence, argument, and testimony that defendant was fired and or otherwise disciplined as a result of this incident or for any other should be barred.

That motion is of course correct to the extent that it seeks to preclude evidence that Kriebs was either fired or disciplined as a result of the incident at issue in this case -- but that does not alter this opinion's earlier analysis as to Anderson-Kriebs' Motion No. 1. Accordingly the ruling on that earlier motion applies here as well, and Motion No. 4 is granted for the present -- but subject to possible reconsideration later.

Next, here is the summary of Anderson-Kriebs' Motion No. 5:

> Bar any mention of the number of attorneys representing John D. Anderson Trucking, Inc. and/or Joseph Kriebs.

That of course is a slam dunk -- it too is granted. So far as any identification of attorneys in the case is concerned, prospective jurors will be told only about those who are handling the case at trial, to prevent the possibility of some taint stemming from any acquaintanceship or relationship between any of the lawyers and any juror selected for the case.

Anderson-Kriebs' Motion No. 6 is summarized briefly in these terms:

> Bar Dr. Mark Pappodopoli from testifying or offering any opinion.

Although Wiesneth's counsel apparently provided no report by Dr. Pappodopoli under Evid. Rule 26(a)(2)(C), as is required of a witness expected to provide both factual and expert testimony, that objection does not preclude that doctor from testifying as to what services he

provided to Wiesneth, but without buttressing that testimony with statements as to his medical opinions. In short, the difference between a percipient witness and an "expert" witness described earlier in this opinion applies here with equal force. Relatedly, Wiesneth himself may testify, as he did at page 40 of his deposition, that he went to Dr. Pappodopoli (his primary care physician for some 20 years) and was referred by him to physical therapy.[5]

Lastly, Anderson-Kriebs' Motion No. 7 is summarized in this brief fashion:

> Exclude medical bills from Alexian Brothers Medical Center.

On that score this Court has difficulty squaring the position advanced by defense counsel with Rule 11(b)'s requirement of objective as well as subjective good faith. Their own expert witness' report (that of Dr. Skaletsky) expressly refers to Alexian Brothers and concludes that the expenses there, as well as all other medical records provided to him, were causally connected to the motor vehicle accident until December 10, 2010.

Because the Alexian Brothers records relate to treatment before that December 10, 2010 date, it is extraordinarily troubling to find defense counsel attempting to bar some $26,000 in that Medical Center's charges. In short, Anderson-Kriebs' Motion No. 7 is denied.

**Conclusion**

For the reasons stated in this memorandum opinion and order, Wiesneth's motions in limine (Dkt. No. 88) are granted in their entirety. As for the Anderson-Kriebs motions in limine (Dkt. No. 81):

1. Motion Nos. 1 and 4 are granted for the present, with some possibility of reconsideration before trial.

[5] See Wiesneth's Response at 6.

2. Motion Nos. 2, 3 and 5 are granted.

3. Motion No. 6 is granted in part and denied in part.

4. Motion No. 7 is denied.

With all motions in limine thus having been addressed, the parties are ordered to provide this Court within 14 days with either a joint statement or separate statements as to their unavailabilities for trial during the period from June 20 through September 30, 2016 (this Court is assuming that the five trial day estimate in the FPTO is still appropriate).

Milton I. Shadur
Senior United States District Judge

Date: May 10, 2016